# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Donta Reid, Appellant.

Appellate Case No. 2011-204288

Appeal from York County
The Honorable John C. Hayes, III, Circuit Court Judge

Opinion No. 27407
Heard December 5, 2013 – Filed July 2, 2014

**AFFIRMED**

Appellate Defender Kathrine H. Hudgins, of Columbia, for Appellant.

Attorney General Alan M. Wilson, Assistant Attorney General Mark R. Farthing, and Assistant Attorney General Jennifer E. Roberts, all of Columbia, for Respondent.

Deputy Public Defender Christopher D. Scalzo, of Greenville, for Amicus Curiae, South Carolina Public Defender Association.

**JUSTICE HEARN:**  In this criminal appeal, Donta Reid challenges the trial court's failure to suppress his confession, arguing it was obtained in violation of his Sixth Amendment right to counsel.  We disagree and find the facts of Reid's case fall within the purview of *Montejo v. Louisiana*, 556 U.S. 778 (2009), in which the United States Supreme Court held a valid *Miranda*[1] given waiver prior to a custodial interrogation sufficed to waive a defendant's Sixth Amendment right to counsel regardless of whether he retained representation at a prior arraignment. *Id.* at 795.  Reid further contends the trial court erred in failing to grant a directed verdict of acquittal on the charges for possession of a firearm during the commission of a violent crime because the State failed to prove he actually or constructively possessed a firearm.  We find those charges were properly submitted to the jury and therefore affirm his convictions.

## FACTUAL/PROCEDURAL BACKGROUND

On the evening of October 1, 2009, Maurice Jackson, Tyrone King, and Kenny Cunningham, the victims, were sitting on Jackson's front porch when Jackson received a text from Reid inquiring about buying marijuana.  When Jackson informed Reid he did not have any marijuana, Reid said he would stop by Jackson's house regardless.  Upon arriving, Reid invited Jackson to accompany him to "midtown," stating he had located some marijuana.  Jackson declined because he could not leave his company on his porch.  Reid asked to use Jackson's cell phone and during the course of his conversation Jackson and Cunningham overheard him say "There's two" or "It's two of them."  Reid indicated he would come back and left, but he never returned.

Jackson and his companions remained on the porch and roughly fifteen to thirty minutes later a man and a woman approached the porch, neither of whom the victims recognized.  The woman ran up the steps and announced that it was a robbery.  The man, who wore a mask, pulled a rifle from his pants, echoed the woman's pronouncement that this was a robbery, and threatened to shoot if any of them moved.

The woman went through the victims' pockets and collected the contents. The man and woman started to leave, but the man turned around and began shooting at the victims.  Cunningham was struck through his left leg and between his toes.  King was shot in the head and later died from the wounds.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

After interviewing the victims, the police investigation focused on Reid, and the day after the robbery, detectives questioned him about the incident. Reid informed law enforcement that he stopped by Jackson's house to use Jackson's phone to call a female friend, who he then went to visit. Reid agreed to accompany the detectives to this friend's apartment so she could corroborate his story; however, once they arrived at the address Reid gave them, he indicated the detectives needed to question a different woman. That woman's mother denied that Reid had been there the night before.

Thereafter, Reid was handcuffed and taken to the police station where he was read his *Miranda* rights, which he waived. Over the next few days, Reid made four different statements to law enforcement. Reid gave the first statement at 1:45 p.m. indicating a man named Darius Jeter acted alone in the robbery and was both the shooter and instigator. Reid admitted he assisted Jeter by reconnoitering Jackson's porch prior to the robbery. He also stated he did not witness the robbery, but heard the shots. Reid was then taken to a jail cell in the police department.

A few hours later Reid asked to speak with the detectives again to provide additional information. Prior to the interview, Reid was Mirandized again and after waiving his rights he gave a second statement at 4:10 p.m. In this statement, he maintained Jeter was the lone robber and shooter; however, this time Reid described witnessing the events of the robbery, although he still stated he only heard the shots as he walked away and did not see the gunfire.

Prior to midnight that same day, detectives approached Reid again for questioning. After waiving his *Miranda* rights, Reid made another statement, this time indicating a female–Samantha Ervin–was also involved in the robbery. Reid still maintained Jeter was the shooter but now stated Ervin helped plan the robbery and drove the three of them to Jackson's house. He also indicated Ervin accompanied Jeter to Jackson's house while he waited in her truck for them. Reid stated after he heard gunfire, Jeter and Ervin ran back to Ervin's truck, and Jeter said he thought he shot one of them.

During his arraignment the following day, Reid filed a request for counsel and a supporting affidavit of indigency. He was approved for appointment of counsel that day. Over the course of the next few days, law enforcement interviewed Ervin and she eventually disclosed that in addition to herself and Reid, Davontay Henson and Aileen Newman were also involved in the crimes. Based on this information, Henson and Newman were both arrested. Thereafter, detectives

questioned Reid on October 6 at 9:40 a.m., informing him they knew he had not been truthful in his prior statements. Although Reid had not yet met with his appointed counsel, he again waived his *Miranda* rights and gave a fourth statement.

In his fourth statement, Reid stated he was with Henson and Newman at Ervin's house earlier in the evening on October 1 when Henson pulled out a rifle and said he wanted to rob someone. Ervin asked if Reid would assist in robbing Jackson and he assented. Reid then walked over to Jackson's home and called Ervin to inform her there were two other people at Jackson's house. After Reid left Jackson's home, he met up with Henson, Ervin, and Newman, who had all been riding around in Ervin's truck. Reid informed them there were three people on the porch and he could not convince Jackson to leave with him. Henson then stated he would just rob all three of them. Reid and Ervin waited in Ervin's truck while Henson and Newman walked to Jackson's home. Reid heard gunshots and shortly thereafter, Henson and Newman returned to the truck. Henson then threatened to "come back and get" anyone who disclosed the events of the evening.

Based on law enforcement's investigations, Reid, Henson, Newman, and Ervin were subsequently charged with murder, assault and battery with intent to kill (ABWIK), criminal conspiracy, armed robbery, and possession of a firearm during the commission of a violent crime. Ervin and Newman both pled guilty, but Henson and Reid proceeded to a joint trial.[2]

Prior to trial, Reid moved to suppress his fourth statement to the police on the grounds it was obtained in violation of his Sixth Amendment right to counsel. During the *Jackson v. Denno*[3] hearing, Reid argued he requested and was appointed counsel at his arraignment on October 3, and therefore, it was a violation of his constitutional rights for police to question him on October 6 without his attorney present. The State contended Reid's argument was no longer viable because *Montejo* held a valid *Miranda* waiver prior to a custodial interrogation is not rendered constitutionally inadequate simply because the defendant was appointed counsel at a prior arraignment. The trial court denied the motion to suppress and the case proceeded to trial.

---

[2] Ervin pled guilty to three counts of armed robbery and one count of criminal conspiracy, and Newman pled guilty to one count of ABWIK, one count of criminal conspiracy, and three counts of armed robbery.

[3] 378 U.S. 368 (1964).

At trial, Cunningham and Jackson both testified about their encounter with Reid prior to the incident and indicated he was not one of the perpetrators present during the robbery. Additionally, Newman and Ervin testified about the particulars of the plan to rob Jackson and how it was executed. They described Reid's participation in scouting out the porch and his attempt to lure Jackson away from the home. They also indicated Reid knew Henson had a rifle he planned to employ, but Reid himself did not take part in the commission of the robbery.

Ultimately, the jury found Reid not guilty of murder, but guilty of assault and battery of a high and aggravated nature, three counts of armed robbery, three counts of possessing a firearm during the commission of a violent crime, and criminal conspiracy. Reid appealed, and the Court certified the case pursuant to Rule 204(b), SCACR.

## ISSUES PRESENTED

I.    Did the trial court err in allowing the introduction of Reid's fourth statement to law enforcement?

II.    Did the trial court err in failing to grant a directed verdict in favor of Reid on the three charges of possession of a firearm during the commission of a violent crime?

## LAW/ANALYSIS

## I.    SIXTH AMENDMENT RIGHT TO COUNSEL

Reid argues the trial court erred in failing to suppress his fourth statement because the police obtained it in violation of his Sixth Amendment right to counsel. We disagree.

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. IV.[4] "[O]nce the adversary judicial process has been initiated, the Sixth Amendment guarantees a

---

[4] The protections of the Sixth Amendment have been extended to the states through the Fourteenth Amendment. *Powell v. Alabama*, 287 U.S. 45, 61, 53 (1932).

defendant the right to have counsel present at all 'critical' stages of the criminal proceedings." *Montejo*, 556 U.S. at 786. This right to counsel may be waived by a defendant provided relinquishment of the right is voluntary, knowing, and intelligent. *Id.* However, the decision to waive counsel need not itself be counseled. *Id.* Generally, "an accused who is admonished with the warnings prescribed [in *Miranda*] has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one." *Patterson v. Illinois*, 487 U.S. 285, 296 (1988).

Reid contends his Sixth Amendment right to counsel was implicated at the arraignment when he requested appointment of counsel. He therefore argues the subsequent police-initiated interview violated that right and his waiver was invalid. We find the United States Supreme Court foreclosed this argument in *Montejo*.

Prior to *Montejo*, the Court established the rule in *Michigan v. Jackson*, 475 U.S. 625 (1986), that "if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." *Id.* at 636. The Court expounded this holding as an extension of the rule in *Edwards v. Arizona*, 451 U.S. 477 (1981), that "an accused person in custody who has 'expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.'" *Jackson*, 475 U.S. at 626 (quoting *Edwards*, 451 U.S. at 484–85).

However, in *Montejo* the Court expressly overruled *Jackson*, finding the protections afforded in *Miranda*, *Edwards*, and *Minnick*[5] sufficiently safeguard a defendant's Sixth Amendment right to counsel. *Montejo*, 556 U.S. at 794. In that case, Jesse Montejo was arrested in connection with a robbery and murder. *Id.* at 781. He waived his right to counsel under *Miranda* and gave various accounts of the incident. *Id.* Several days later, Montejo was brought before a court for a "72-hour hearing," a preliminary hearing required in Louisiana during which the court automatically appointed him an attorney as part of the course of the proceeding. *Id.* Prior to meeting with his newly retained attorney, detectives visited Montejo in prison and requested he accompany them in searching for the murder weapon. *Id.*

---

[5] *Minnick v. Mississippi*, 498 U.S. 146 (1990).

The detectives read Montejo his *Miranda* rights again and he agreed to go on the excursion, during which time he wrote an inculpatory letter of apology to the victim's widow. *Id.* at 782.

At trial, Montejo argued the letter must be excluded under *Jackson* because counsel was appointed at his arraignment and therefore his subsequent waiver was presumptively invalid. *Id.* The trial court rejected his argument and allowed admission of the letter. *Id.* The jury convicted Montejo of first-degree murder and sentenced him to death. *Id.* On appeal, the Louisiana Supreme Court affirmed his conviction. *Id.* In rejecting his reliance on *Jackson*, that court found the

> prophylactic protection of *Jackson* is not triggered unless and until the defendant has actually requested a lawyer or has otherwise asserted his Sixth Amendment right to counsel. Because Montejo simply stood mute at his 72–hour hearing while the judge ordered the appointment of counsel, he had made no such request or assertion.

*Id.*

On certiorari to the United States Supreme Court, Montejo argued Louisiana's application of *Jackson* produced an arbitrary and unworkable standard that could not be applied consistently nationwide because some states automatically appoint counsel to indigent defendants while others require affirmative action by the defendant to obtain counsel. *Id.* at 783–84. Montejo contended the Sixth Amendment's right to counsel should not turn on whether a defendant *requested* counsel but whether he was *represented* by counsel, and once represented the defendant could not constitutionally be approached by law enforcement for questioning while in custody. *Id.* at 786. The majority of the Court rejected both interpretations. *Id.* at 792. Although agreeing Louisiana's interpretation invited mischief in determining whether a defendant adequately "invoked" his right to counsel, the Court found Montejo's reading was inconsistent with the *Jackson* holding. *Id.* at 783. Specifically, the Court noted that the evil *Jackson* sought to redress was the potential for police badgering defendants into changing their minds and waiving their right to counsel after that right was asserted. *Id.* at 798. However, under Montejo's construction of *Jackson*, if a defendant is automatically appointed counsel, the police cannot initiate questioning of him despite the fact he never asserted the right to have his attorney present. *Id.* This, the majority found, was an inconsistent expansion from the antibadgering rationale that drove the decision in *Jackson*, for a defendant could not be coerced

into changing his mind if he never actually invoked his right to counsel in the custodial setting. *Id.*

In light of what it considered equally untenable interpretations, the Court determined the rule enunciated in *Jackson* had proved unworkable and should be abandoned. *Id.* at 792. Furthermore, the Court observed the limited benefits of *Jackson* in light of the safeguards provided by *Miranda*, *Edwards*, and *Minnick*:

> Under *Miranda*'s prophylactic protection of the right against compelled self-incrimination, any suspect subject to custodial interrogation has the right to have a lawyer present if he so requests, and to be advised of that right. Under *Edwards*' prophylactic protection of the *Miranda* right, once such a defendant "has invoked his right to have counsel present," interrogation must stop. And under *Minnick*'s prophylactic protection of the *Edwards* right, no subsequent interrogation may take place until counsel is present, "whether or not the accused has consulted with his attorney."

*Id.* at 794 (citations omitted). Accordingly, the Court reasoned that "[i]f that regime suffices to protect the integrity of a suspect's voluntary choice not to speak outside his lawyer's presence before his arraignment, it is hard to see why it would not also suffice to protect that same choice after arraignment, when Sixth Amendment rights have attached." *Id.* at 795 (citations and quotations omitted). Ultimately, the Court overruled *Jackson* and remanded Montejo's case to allow him to invoke any *Edwards*' protections he might claim, such as arguing he clearly asserted his right to counsel when officers approached him. *Id.* at 797.

Turning to our case, we find *Montejo* bars Reid's claim that his Sixth Amendment right to counsel was violated. Although Reid makes much of the factual distinctions between the cases—Montejo was automatically appointed counsel while Reid elected to file a form requesting counsel—it is exactly this type of argument *Montejo* meant to preclude by overruling *Jackson*. The Court did more than merely remove the presumption of invalidity of a waiver after a defendant's Sixth Amendment rights were invoked. It held that where, as here, a defendant claimed a violation of his Sixth Amendment right to counsel in the context of a custodial interrogation, the relevant inquiry was what happened the moment police initiated contact. Therefore, the question is no longer, as Reid posits, whether the defendant invoked his right to counsel at arraignment, but whether he waived his rights prior to the interrogation. *See id.* at 797 ("What

matters for *Miranda* and *Edwards* is what happens when the defendant is approached for interrogation, and (if he consents) what happens during the interrogation—not what happened at any preliminary hearing.").

We accordingly find that under *Montejo*, Reid waived his right to counsel by signing the *Miranda* waiver prior to giving his fourth statement. Because he made no allegations that he requested his counsel be present or that this waiver was otherwise not knowing and voluntary, we affirm the admission of his statement.[6]

## II.    DIRECTED VERDICT

Reid also argues the trial court erred in failing to direct a verdict of acquittal on the charges for possession of a firearm during the commission of a violent crime. We disagree.

On appeal from the denial of a motion for a directed verdict, the Court views the evidence in the light most favorable to the State. *State v. Buckmon*, 347 S.C. 316, 321, 555 S.E.2d 402, 404 (2001). To survive a directed verdict motion, the State must provide direct or substantial circumstantial evidence reasonably tending to prove the defendant's guilt, or from which the defendant's guilt can be fairly and logically deduced. *State v. Walker*, 349 S.C. 49, 53, 562 S.E.2d 313, 315 (2002).

In his motion for a directed verdict, Reid argued the State failed to prove he ever possessed the rifle. The State countered that he could be convicted under the theory of "the hand of one is the hand of all." The trial court denied the motion.

---

[6] Although Reid makes allusions to the fact that a state can provide more expansive protection than that mandated by the federal Constitution, he never raised before the trial court any South Carolina constitutional provision or other state law upon which to ground such an extension. Instead, he argued only a violation of his Sixth Amendment rights under the United States Constitution and this Court must apply those rights as interpreted by the United States Supreme Court. *Oregon v. Hass*, 420 U.S. 714, 719 (1975) ("[A] State is free as a matter of its own law to impose greater restrictions [on] police activity than those this Court holds to be necessary upon federal constitutional standards. But, of course, a State may not impose such greater restrictions as a matter of federal constitutional law when this Court specifically refrains from imposing them." (internal citations omitted)). We therefore confine our analysis to Reid's rights under the United States Constitution.

The doctrine of accomplice liability arises from the theory that "the hand of one is the hand of all."  23 S.C. Jur. Homicide § 22.1 (2014).  Under this theory, one who joins with another to accomplish an illegal purpose is liable criminally for everything done by his confederate incidental to the execution of the common design and purpose.  *State v. Mattison*, 388 S.C. 469, 479, 697 S.E.2d 578, 584 (2010).  A person must personally commit the crime or be present at the scene of the crime and intentionally, or through a common design, aid, abet, or assist in the commission of that crime through some overt act to be guilty under a theory of accomplice liability.  *State v. Langley*, 334 S.C. 643, 648–49, 515 S.E.2d 98, 101 (1999).  Accordingly, proof of mere presence is insufficient, and the State must present evidence the participant knew of the principal's criminal conduct.  *State v. Leonard*, 292 S.C. 133, 137, 355 S.E.2d 270, 272 (1987).  If "a person was 'present abetting while *any* act necessary to constitute the offense [was] being performed through another,' he could be charged as a principal—even 'though [that act was] *not the whole thing necessary*.'"  *Rosemond v. United States*, 134 S. Ct. 1240, 1246 (2014) (alteration in original) (quoting 1 J. Bishop, Commentaries on the Criminal Law § 649, p. 392 (7th ed. 1882)).

Just as Reid could be convicted of assault and battery of a high and aggravated nature and armed robbery under a theory of accomplice liability even though he did not wield the offending weapon, so could he be found guilty for possession of that firearm.  Although there was no evidence presented Reid assisted Henson in possessing the firearm, the State presented evidence Reid helped orchestrate the robberies and reconnoitered the scene.  Furthermore, Reid knew Henson had a rifle in his possession for use during the robberies.  Reid then waited at the getaway vehicle for Henson to return with the proceeds.[7]  We find the State presented direct or substantial circumstantial evidence Reid facilitated the robbery and knew Henson intended to use a firearm during the commission of the crime.  We therefore hold the trial court properly denied Reid's motion for a directed verdict on the charges for possession of a firearm during the commission of a violent crime.[8]

---

[7] This Court has previously held that a participant need not witness the crime to be "present at the scene" and guilty under a theory of accomplice liability.  *See State v. Chavis*, 277 S.C. 521, 522, 290 S.E.2d 412 (1982) (affirming a defendant's conviction as a principal where the defendant helped plan the robbery, but was three miles away from the scene when the crime actually occurred).

[8] This holding is in accord with other jurisdictions that have considered guilt under an accomplice liability theory in similar circumstances.  *See, e.g.*, *Rosemond*, 134

# CONCLUSION

Based on the foregoing, we affirm both the trial court's denial of Reid's motion to suppress his fourth statement and its denial of his directed verdict motion on the charges of possessing a firearm during the commission of a violent crime.

**TOAL, C.J., PLEICONES, BEATTY and KITTREDGE, JJ., concur.**

---

S. Ct. at 1243 (holding a defendant can be convicted as a principal for aiding and abetting the crime of "us[ing] or carr[ying] a firearm" during a crime if the "defendant actively participated in the underlying drug trafficking or violent crime with advance knowledge that a confederate would use or carry a gun during the crime's commission," even if the defendant did not use or carry a gun himself); *Battle v. United States*, 515 A.2d 1120, 1128 (D.C. 1986) (holding an unarmed aider and abettor is subject to a sentence enhancement where the principal was armed); *Com. v. Humphries*, 991 N.E.2d 652, 658 (Mass. 2013) ("[T]o establish liability for firearm possession under a theory of joint venture, it is not necessary that the Commonwealth prove that a defendant had actual or constructive possession of a firearm, but only that such a defendant was accessory to another identified defendant in possessing a firearm." (internal quotation marks omitted)); *State v. White*, 484 A.2d 691, 695 (N.J. 1984) (finding that the Graves Act, which allows sentence enhancement based on use or possession of a firearm, applies to an unarmed accomplice); *but see Dailey v. State*, 675 P.2d 657, 661 (Alaska Ct. App. 1984) (holding that Alaska's sentence enhancement statute for possession of a firearm during the commission of a felony should apply "only to a defendant who personally uses or possesses a firearm during the commission of an offense"); *Garringer v. State*, 909 P.2d 1142, 1149 (Haw. 1996) (interpreting Hawaii's sentencing enhancement statute to preclude the imposition of enhanced sentencing where defendant did not personally possess, threaten to use, or use a firearm while engaged in the commission of that felony).