**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Dashawn Chazz Hurley, Appellant.

Appellate Case No. 2022-001441

———————

Appeal From Greenwood County
Frank R. Addy, Jr., Circuit Court Judge

———————

Unpublished Opinion No. 2025-UP-234
Submitted March 3, 2025 – Filed July 16, 2025

———————

**AFFIRMED**

———————

E. Charles Grose, Jr., of Grose Law Firm, of Greenwood,
for Appellant.

Attorney General Alan McCrory Wilson and Assistant
Attorney General Joshua Abraham Edwards, both of
Columbia; and Solicitor David Matthew Stumbo, of
Greenwood, all for Respondent.

———————

**PER CURIAM:** This is a direct appeal stemming from a shooting at an apartment complex in Greenwood. The State claimed Dashawn Chazz Hurley drove three people to the area and that some or all of Hurley's passengers got out of the vehicle

and shot at two individuals on a porch or balcony while Hurley waited nearby as the getaway driver. The two alleged targets suffered gunshot wounds but survived. Two of the alleged shooters also sustained gunshot wounds, and one of them died.

The State theorized the shooting was retaliation for a murder that occurred about one month prior. The State attempted to introduce evidence of gang affiliation to support this theory, but the trial court found gang-related evidence would be unfairly prejudicial and excluded it. The jury acquitted Hurley of the murder charge tied to the death of his alleged accomplice, but convicted him of attempted murder and criminal conspiracy as to the two targets. The trial judge sentenced Hurley to ten years for attempted murder and five years for criminal conspiracy, set to run concurrently.

Hurley raises eight issues on appeal, including questions about certain evidentiary rulings; whether a mistrial, directed verdict, or new trial were warranted; and certain sentencing considerations. We respectfully disagree with his arguments. For the reasons outlined below, we affirm his convictions and sentences.

## TIMELINESS OF DISCOVERY

Hurley claims the State did not timely disclose evidence supporting its theory that he and his codefendants conspired to murder the alleged targets in response to a previous murder. Hurley argues the trial court erred in not suppressing all evidence relating to this retaliation theory that was produced on or after a date roughly two weeks before trial. He alleges violations of Rule 5, SCRCrimP, and his right to due process. We find no error in the trial court's decision.

Even if there was a Rule 5 violation, "reversal is required only where the defendant suffered prejudice from the violation." *State v. Kennerly*, 331 S.C. 442, 453–54, 503 S.E.2d 214, 220 (Ct. App. 1998), *aff'd*, 337 S.C. 617, 524 S.E.2d 837 (1999). We find no prejudice here. The trial court significantly limited the State's ability to present evidence on its gang retaliation theory. In fact, all evidence relating to gang affiliations was completely excluded. It appears the only evidence actually presented to the jury that could fall within Hurley's "late notice" category was pictures, or screenshots of posts, from the defendants' own social media pages. These posts and pictures, which were in the public domain, were introduced to establish friendships between the defendants, their deceased alleged accomplice, and the victim of the previous murder, as well as friendships between the targets in this case and the person convicted of the previous murder. Hurley confirmed these friendships during his testimony, as did one of his codefendants, Narkevious Reid.

The two targets in this shooting confirmed the friendships as well. *See, e.g.*, *State v. Kerr*, 330 S.C. 132, 150, 498 S.E.2d 212, 221 (Ct. App. 1998) (finding no prejudice where "the pictures in question [were] merely depictions of the damage to [the] truck [the appellant collided with]," and the appellant himself admitted to the collision); *cf. State v. Lawton*, 382 S.C. 122, 127–28, 675 S.E.2d 454, 457 (Ct. App. 2009) (finding clear prejudice where the State failed to disclose a letter written by the defendant and instead surprised the defendant with the letter by using it during the State's cross-examination of him as impeachment evidence). Thus, we find no prejudicial error in the trial court's decision to not exclude all evidence disclosed within two weeks of trial.

Because we do not see how these social media posts and photos could be considered exculpatory, an analysis under *Brady* is not necessary. *See Lawton*, 382 S.C. at 126 n.4, 675 S.E.2d at 456 n.4 ("As there is no evidence indicating Lawton's statement was in anyway exculpatory, the *Brady* rule is not at issue in this case."); *see also Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment").

**GANG-RELATED EVIDENCE**

Hurley next argues the trial court erred in failing to require the State to produce a copy of the Greenwood Police Department's internal "gang book" because the book was material to guilt or innocence and sentencing, and it was "necessary for preparation of [his] defense." It appears this argument is also based on Rule 5, SCRCrimP. Hurley asks this court to order a new trial and require the gang book be disclosed, or in the alternative, a new sentencing hearing.

Pretrial, the State proffered testimony from a detective about the alleged gang affiliations of the defendants and victims. The detective provided two ways the Greenwood Police Department tracks gang members: through "Gang Net," a statewide system, and by updating lists in the internal Greenwood gang book. The detective produced certain lists showing Hurley, his codefendants, their deceased alleged accomplice, and the prior murder victim were "Contraband Gang" members, and the two targets of this shooting and the individual convicted of the previous murder were "Southside" gang members. The detective testified the list of Contraband Gang members came from the gang book.

It appears that defense counsel wanted the State to produce a paper copy of the gang book. The trial court delayed ruling on that request to first determine if the book was material.

As noted before, the trial court excluded evidence of anyone's alleged gang affiliation. In light of that, we do not see how Hurley can plausibly claim prejudice from not having a copy of the book, and we find no error in the trial court's decision to not order the book's production. *See Kennerly*, 331 S.C. at 453–54, 503 S.E.2d at 220 (requiring reversal for a Rule 5 violation "only where the defendant suffered prejudice from the violation"); *see also id.* at 454, 503 S.E.2d at 220 (stating the purpose of Rule 5 is to ensure a criminal defendant receives a "fair trial" by requiring production of documents that are material to the preparation of his or her defense); *id.* at 453, 503 S.E.2d at 220 ("[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." (alteration in original) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985))); *id.* (stating evidence "is not deemed 'material' if the defense discovers the information in time to adequately use it at trial").

Hurley argues the gang book played a factor in his sentencing. As discussed more thoroughly at the end of this opinion, the trial court considered gang affiliations during sentencing, but any files or lists apparently coming from the gang book were produced in open court. The trial court was aware that Hurley was not added to any list of potential gang members until very close to trial. This was part of the court's reasoning for excluding gang evidence from the jury's consideration. Again, because Hurley failed to establish any prejudice from not receiving a physical copy of the entire gang book, we find no error in failing to order the book's production.

## GUNSHOT RESIDUE EVIDENCE

Hurley contends a forensic analyst's testimony should have been excluded because the testimony "[did] not assist the jurors and was unreliable" based on South Carolina Law Enforcement Division's (SLED) new policy to not test gunshot victims for gunshot residue. Hurley contends the testimony was prejudicial because the jurors could have erroneously concluded that one of his codefendants, Xayvion Hill, and their deceased alleged accomplice, Trivoriaye Alston, fired the handguns police discovered near the scene of this shooting. Hurley claims this "could lead to the erroneous conclusion that Mr. Hill and Mr. Alston conspired with Mr. Reid and Mr. Hurley."

"A court's ruling on the admissibility of evidence will not be reversed on appeal absent an abuse of discretion or the commission of legal error, which results in prejudice to the defendant." *State v. Gleaton*, 444 S.C. 394, 408, 906 S.E.2d 630, 637 (Ct. App. 2024) (quoting *State v. Torres*, 390 S.C. 618, 625, 703 S.E.2d 226, 230 (2010)). It follows that "[a] defendant seeking reversal based on error in the admission of evidence has the burden of showing that the evidence was prejudicial." *State v. Jolly*, 304 S.C. 34, 37, 402 S.E.2d 895, 897 (Ct. App. 1991). Hurley has not met this burden. The forensic analyst's testimony fully addressed SLED's new policy and even explicitly informed the jury that she could not definitively say Hill shot a gun, largely based on the rationale of the new policy. The jury had all of the information that defense counsel used to counter the expert's testimony. The weighing of that evidence was properly left to the jury.

Even if it was error to allow this forensic analyst to testify, "[e]rrors are harmless where they could not reasonably have affected the result of the trial." *Id.* Though evidence of gunshot residue may be considered strong evidence in certain circumstances, in light of the fact that the analyst's testimony was not definitive and there was other evidence to support the State's theory of the case (such as eye witness testimony and DNA evidence), we cannot say the admission of the testimony regarding gunshot residue prejudicially affected the outcome in this case. Consequently, we affirm the admission of the analyst's testimony.

## MISTRIAL

Hurley argues he was allegedly prejudiced and a mistrial was warranted when the State asked one of the witnesses, a detective, whether he had seen a social media post that gave him concern of "retaliation" for the murder that occurred one month before this shooting. Hurley contends the trial judge's curative instruction was not sufficient to cure this prejudice.

"The decision to grant or deny a mistrial is within the sound discretion of the trial court and will not be overturned on appeal absent an abuse of discretion amounting to an error of law." *State v. Bantan*, 387 S.C. 412, 417, 692 S.E.2d 201, 203 (Ct. App. 2010). "The granting of a motion for mistrial is an extreme measure that should be taken only when the incident is so grievous the prejudicial effect can be removed in no other way." *Id.* "The trial court should exhaust other methods to cure possible prejudice before aborting a trial." *Id.* at 417, 692 S.E.2d at 203–04.

We find no error in the trial court's decision to not grant a mistrial. We cannot conclude the unanswered question was "so grievous" that any potential prejudicial effect was not cleansed by the curative instruction that the court gave twice. *Id.* at 417, 692 S.E.2d at 203; *see also id.* at 420, 692 S.E.2d at 205 ("[A] curative instruction is generally deemed to have cured any alleged error."); *State v. George*, 323 S.C. 496, 510, 476 S.E.2d 903, 911–12 (1996) ("If the trial judge sustains a timely objection to testimony and gives the jury a curative instruction to disregard the testimony, the error is deemed to be cured."); *State v. Walker*, 366 S.C. 643, 659–60, 623 S.E.2d 122, 130 (Ct. App. 2005) (holding a mistrial motion was properly denied when "the judge gave [multiple] curative instruction[s] to the members of the jury," including during the general jury instructions, and "[e]ach time, the curative instruction was timely and complete"). Further, as mentioned, no testimony was actually given in response to the question, and the State had already laid a foundation for its retaliation theory, even without previously using the word "retaliation." Thus, the trial court properly denied the motion for a mistrial.

## DIRECTED VERDICT

The trial court granted Hurley's motion for a directed verdict on the firearm charge but allowed the remaining charges to go to the jury. Hurley contends the trial court should have directed verdicts of acquittal on all charges. We respectfully disagree.

"A defendant is entitled to a directed verdict when the State fails to produce evidence of the offense charged." *State v. Walker*, 349 S.C. 49, 53, 562 S.E.2d 313, 315 (2002). "In reviewing a motion for directed verdict, the trial judge is concerned with the existence of the evidence, not with its weight." *Id.* "If there is any direct evidence or substantial circumstantial evidence reasonably tending to prove the guilt of the accused, the appellate court must find the case was properly submitted to the jury." *State v. Rosemond*, 356 S.C. 426, 429–30, 589 S.E.2d 757, 758 (2003). On appeal, this court "view[s] the evidence in the light most favorable to the State." *Walker*, 349 S.C. at 53, 562 S.E.2d at 315. "Unless there is a total failure of competent evidence as to the charges alleged, refusal by the trial judge to direct a verdict of acquittal is not error." *State v. Arnold*, 361 S.C. 386, 389, 605 S.E.2d 529, 531 (2004); *see also State v. Cherry*, 361 S.C. 588, 594, 606 S.E.2d 475, 478 (2004) ("[A] trial judge is not required to find that the evidence infers guilt to the exclusion of any other reasonable hypothesis.").

The trial court granted Hurley's directed verdict motion on the charge for possession of a weapon during a violent crime but denied the motion as to murder, attempted murder, and criminal conspiracy. The jury acquitted Hurley and his codefendants

of murder.  The State's entire theory of culpability for Hurley on the other charges rested on accomplice liability or "the hand of one, hand of all."  "Under this theory, one who joins with another to accomplish an illegal purpose is liable criminally for everything done by his confederate incidental to the execution of the common design and purpose." *State v. Reid*, 408 S.C. 461, 472, 758 S.E.2d 904, 910 (2014).  "[T]he State need not prove [knowledge of the criminal conduct through] a formal expressed agreement, but rather can prove the same by circumstantial evidence and the conduct of the parties." *State v. Gibson*, 390 S.C. 347, 354, 701 S.E.2d 766, 770 (Ct. App. 2010).

A summary of the evidence before the jury prior to the directed verdict motions and in the light most favorable to the State is as follows.  The State presented evidence that a black Toyota Camry was driving "suspicious[ly]" around this group of apartment complexes immediately prior to the shooting.  The State also presented evidence that there were multiple people in that car, and at least one of those people got out of the car immediately prior to the shooting and took the direct path from Gardens at Parkway (where a black car resembling a Camry appeared to be parked and waiting) to Hillcrest (where the shooting occurred).  The person seen exiting the black vehicle moments before the gunfire was wearing a shirt resembling the shirt worn by Hill, one of Hurley's codefendants.  Another witness identified three men at the shooting, one of whom was shirtless and holding a gun.

The Camry was again identified near the scene at Gardens at Parkway when another witness saw a person (later identified as Alston, an alleged accomplice) hanging out of the vehicle as the car sped away.  Codefendant Hill was arriving at this same location as the Camry left.  Within minutes, the Camry pulled up to the nearby hospital, Hurley was captured on video coming out of the driver's side, and codefendant Reid was seen shirtless assisting Alston into a wheelchair.  Reid and Hurley immediately left the hospital without speaking to hospital staff or law enforcement.

Two guns were found at the scene: one was left where the Camry was parked at Gardens at Parkway, and the other was left much closer to the scene of the shooting.  Alston and Hill both tested positive for gunshot residue, and it was deemed highly likely Alston's DNA was on the gun left in the parking lot.

While the State's retaliation theory could not be clearly spelled out due to the court's exclusion of gang evidence, there was evidence that Hurley, Reid, Hill, and the prior murder victim were friends, as well as evidence that the two targets of this shooting

and the individual convicted of the prior murder were friends. The State elicited testimony about the previous murder primarily through a police detective.

Defense counsel argued there was no direct evidence that Hurley's car was the black car driving around the apartment complexes prior to the shots being fired and that there was no evidence that all three codefendants were together the day this shooting occurred. Notably, Hurley's and Reid's testimonies placed both of them at the apartment complexes prior to and during the shots being fired. *See State v. Phillips*, 416 S.C. 184, 192 n.7, 785 S.E.2d 448, 452 n.7 (2016) ("Under the waiver rule, a defendant who presents evidence in his own defense waives the right to have the court review the denial of directed verdict based solely on the evidence presented in the State's case-in-chief."); *State v. Hepburn*, 406 S.C. 416, 437, 753 S.E.2d 402, 413 (2013) (providing the waiver rule applies to "gap-filling evidence"). And though this case is largely based on circumstantial evidence, we find the evidence sufficient for a reasonable juror to "fairly and logically deduce[]" guilt. *State v. Bennett*, 415 S.C. 232, 236–37, 781 S.E.2d 352, 354 (2016) (distinguishing, in a circumstantial case, the jury's inquiry, which requires "that every circumstance relied upon by the state be proven beyond a reasonable doubt; and that all of the circumstances so proven be consistent with each other and, taken together, point conclusively to the guilt of the accused to the exclusion of every other reasonable hypothesis" from the court's directed verdict analysis, where the court "must submit the case to the jury if there is 'any substantial evidence which reasonably tends to prove the guilt of the accused, or from which his guilt may be fairly and logically deduced'").

Hurley urges us to define "substantial circumstantial evidence" and contends that the trial court erred in failing to do so. We are not aware of a standardized definition of what constitutes substantial circumstantial evidence beyond the familiar language from precedent we provided above. We suspect that is because the application of these principles relies on the facts of each case. The trial court seemed to express the same sentiment, and the record shows the trial court thoroughly considered the evidence in deciding the directed verdict motions. Accordingly, we affirm the denial of the directed verdict motion.

**NEW TRIAL**

Hurley argues for a new trial based on cumulative error, relying on all of the above alleged errors and his belief that the trial judge improperly "rushed the trial." Because we find no errors in the trial judge's rulings, the cumulative error doctrine is inapplicable. *See State v. Beekman*, 405 S.C. 225, 237, 746 S.E.2d 483, 490 (Ct. App. 2013) ("The cumulative error doctrine provides relief to a party when a

combination of errors, insignificant by themselves, has the effect of preventing the party from receiving a fair trial, and the cumulative effect of the errors affects the outcome of the trial. An appellant must demonstrate more than error in order to qualify for reversal pursuant to the cumulative error doctrine; rather, he must show the errors adversely affected his right to a fair trial to qualify for reversal on this ground." (citation omitted)), *aff'd*, 415 S.C. 632, 785 S.E.2d 202 (2016).

We see no merit to Hurley's additional claim that the trial court rushed the trial. First, Hurley does not cite any caselaw in support of his allegation that it was "legal error" for the trial judge to allegedly rush the case. Second, while the record is certainly not a perfect window into the climate of a case's trial, our view of the instances where Hurley's counsel expressed concern about the trial being rushed is that they primarily occurred when the trial court was trying to be both diligent and efficient. Defense counsel presented numerous arguments throughout the trial, and the record indicates nothing other than the trial court fully hearing and acting on all arguments and motions. As this case was drawing to a close, and even though it had been lengthy, the trial court refrained from having the jury begin deliberations at the end of the day to avoid a rushed or "tired" verdict. Accordingly, we affirm the denial of Hurley's new trial motion.

## SENTENCING

Finally, Hurley contends the trial court erred in allegedly enhancing his sentence based on gang affiliation when there was no finding by the jury that he was a gang member and thus it was not proven beyond a reasonable doubt.

Hurley relies on the line of cases that involve the U.S. Supreme Court's holding in *Apprendi v. New Jersey*: "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490 (2000); *see also Hurst v. Florida*, 577 U.S. 92, 97 (2016) (reiterating the *Apprendi* Court's holding that any fact that "expose[s] the defendant to a greater punishment than that authorized by the jury's guilty verdict" is an "element" that must be submitted to a jury" (alteration in original)); *id.* at 94 (declaring a Florida law unconstitutional because it "required the judge to hold a [hearing] separate [from the jury] . . . [to] determine whether sufficient aggravating circumstances existed to justify imposing the death penalty"); *Ring v. Arizona*, 536 U.S. 584 (2002) (same as *Hurst*); *State v. Simuel*, 357 S.C. 378, 593 S.E.2d 178 (Ct. App. 2004) (following *Apprendi*'s holding where a prison escapee's maximum sentence was enhanced from two years to three years).

We respectfully disagree that this line of cases applies here. The jury convicted Hurley of attempted murder (maximum sentence of thirty years per S.C. Code Ann. § 16-3-29 (2015)) and criminal conspiracy (maximum sentence of five years per S.C. Code Ann. § 16-17-410 (2015)). There were no formal enhancements applied when the trial court considered gang affiliations during sentencing; instead, the court used this information when considering the proper sentence to impose *within* the statutory ranges. *See Hayden v. State*, 283 S.C. 121, 123, 322 S.E.2d 14, 15 (1984) ("A sentencing judge 'may appropriately conduct an inquiry broad in scope, largely unlimited as to either the kind of information he may consider, or the source from which it may come.'" (quoting *United States v. Tucker*, 404 U.S. 443, 446 (1972))); *cf. Apprendi*, 530 U.S. at 490 ("Other than the fact of a prior conviction, any fact that *increases the penalty for a crime beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." (emphasis added)). In fact, Hurley's sentence for attempted murder (ten years) was well-below the maximum, and though he received the maximum sentence for criminal conspiracy (five years), the important point is that the court did not *enhance* the maximum sentence permitted by statute. Thus, we find no error in the trial court's consideration of gang affiliations during sentencing.

**AFFIRMED.**[1]

**THOMAS, HEWITT, and CURTIS, JJ., concur.**

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.