675 S.E.2d 454

**The STATE, Respondent,**

v.

**Vernon Leroy LAWTON, Appellant.**

**No. 4523.**

Court of Appeals of South Carolina.

Heard Jan. 7, 2009.

Decided March 25, 2009.

---

2. We decide this case without oral arguments pursuant to Rule 215, SCACR.

Chief Appellate Defender Joseph L. Savitz, III, and Assistant Appellate Defender Elizabeth Franklin–Best, both of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Harold M. Coombs, Jr., all of Columbia; and Solicitor Jerry W. Peace, of Greenwood, for Respondent.

HEARN, C.J.

Vernon Lawton was shot and seriously wounded as he entered the home of his former girlfriend. As a result of that incident, he was convicted of first degree burglary, possession of a firearm during the commission of a violent crime, and possession of a pistol by a person convicted of a violent crime. Lawton appeals, arguing the circuit court erred in allowing the State to cross examine him on the content of a letter which the State failed to disclose prior to trial. We reverse and remand.

## FACTS

Lawton and Toni Badger [1] were involved in a relationship during the summer of 2003. Over the course of the relationship, the couple frequented local bars and restaurants, as well as spent time together at one another's house. After a few months, trust issues developed between the couple, and they decided to part ways. Despite their breakup, Lawton testified he would still, on occasion, buy gifts for Badger and help her out around her trailer.

In addition, Lawton testified he would frequently visit Badger's trailer at night, even after the couple had ended their relationship. He would first drive past the trailer, and if the outside porch light was on, park down the street and go inside for a visit Lawton further explained it was not uncommon for him to access Badger's trailer by reaching through the doggy-door to unlock both the door and deadbolt.

On the night in question, Lawton passed by Badger's trailer and saw that the front porch light was on. As he approached, Badger's dogs began barking. After first trying the door and finding it locked, Lawton reached through the doggy-door, attempting to unlock the door so as to gain entry to the trailer.

Badger, awakened by the barking, went to her living room and saw what she believed to be an intruder coming through the doggy-door. She picked up the phone to call 911, went back to her bedroom, grabbed her handgun, and then came back into the doorway of her bedroom to see the intruder.

---

1. At the time of the incident, Badger, who is now married, was Toni Harralson.

Badger recognized Lawton, who was, by that time, halfway through the doggy-door. Badger testified she was initially relieved the intruder was Lawton, and placed her gun in an adjacent chair. However, while attempting to help Lawton to his feet, Badger noticed he was carrying what appeared to be a handgun. Badger asked Lawton to relinquish the gun, but Lawton refused. A struggle ensued, during which Lawton pushed Badger into the chair where she had previously placed her handgun. Badger grabbed the handgun and shot Lawton, severely injuring his leg.

Following the shooting, Lawton was arrested and charged with: (1) burglary; (2) pointing and presenting a firearm; (3) possession of a firearm during the commission of a violent crime; and (4) possession of a firearm by a person convicted of a crime of violence. At trial, Lawton testified he frequently visited his ex-girlfriend in this manner with her consent. On cross-examination, the State produced a letter Lawton had allegedly written to his ex-wife that contained this sentence: "I know that my story is full of lies, but no more than hers, mine just have to be better than hers." Lawton immediately objected to the use of the letter based on the State's failure to disclose it prior to trial under Rule 5, SCRCrimP. Specifically, Lawton argued the State was required to produce the letter in response to his Rule 5 motion under Subsection (a)(1)(A) [2] because it qualified as a relevant written statement made by Lawton that was within the State's control. In response, the State argued the letter was not covered under Rule 5 because it was being used for impeachment purposes. The circuit court ruled the letter was admissible because it was only being used for impeachment.

---

2. Rule 5(a)(1)(A) provides as follows:

(A) Statement of Defendant. Upon request by a defendant, the prosecution shall permit the defendant to inspect and copy or photograph: any relevant written or recorded statements made by the defendant, or copies thereof, within the possession, custody or control of the prosecution, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the prosecution; the substance of any oral statement which the prosecution intends to offer in evidence at the trial made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a prosecution agent.

Following a recess, counsel for Lawton requested and received permission to flesh out his objection to the use of the letter and to state additional grounds. Counsel then argued the letter also should have been produced in response to his Rule 5 motion under Subsection (a)(1)(C) [3], asserting that the letter was material to Lawton's defense. The circuit court found the letter was not "relevant" under Subsection (a)(1)(A) but was "a collateral matter having to do with the credibility of the witness," and therefore allowed the State to impeach Lawton pursuant to Rule 608, SCRE. Accordingly, the court allowed the State to ask Lawton if he had written a letter to his ex-wife that contained the quoted sentence. The jury convicted Lawton and this appeal followed.

## LAW/ANALYSIS

■ Lawton argues the circuit court erred in failing to suppress the letter and all testimony related thereto based upon the State's failure to comply with Rule 5, SCRCrimP,[4] asserting the letter should have been disclosed under both Subsections (a)(1)(A) and (a)(1)(C). We agree the circuit court erred in failing to suppress the letter because of the State's failure to comply with Subsection (a)(1)(A).[5]

---

3. Rule 5(a)(1)(C), SCRCrimP provides as follows:

   (C) Documents and Tangible Objects. Upon request of the defendant the prosecution shall permit the defendant to inspect and copy books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the prosecution, and which are material to the preparation of his defense or are intended for use by the prosecution as evidence in chief at the trial, or were obtained from or belong to the defendant.

4. We note that Lawton initially couched his objection to the introduction of the letter in terms of a "Rule 5 *Brady* motion[.]" Rule 5, SCRCP, addresses the production of "relevant written or recorded statements" while *Brady* dealt with the production of exculpatory evidence. *See Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (holding prosecutorial suppression of exculpatory evidence material to guilt or to punishment violates due process.) As there is no evidence indicating Lawton's statement was in anyway exculpatory, the *Brady* rule is not at issue in this case.

5. We decline to address Lawton's argument under Rule 5(a)(1)(C), SCRCrimP, because that issue was never ruled on by the circuit court. *Wilder Corp. v. Wilke*, 330 S.C. 71, 497 S.E.2d 731 (1998) (finding an

■ Initially, we note that we analyze the circuit court's ruling under an abuse of discretion standard. *See State v. Landon,* 370 S.C. 103, 108, 634 S.E.2d 660, 663 (2006) (holding a violation of the rule governing the disclosure of evidence in criminal cases is not reversible error unless prejudice is shown); *State v. Colf,* 337 S.C. 622, 625, 525 S.E.2d 246, 248–49 (2000) (stating an appellate court shall not reverse a trial court's ruling on admissibility of evidence or the scope of cross-examination absent a showing of abuse of discretion and prejudice).

The circuit court stated that the letter involved the credibility of Lawton, which was merely a collateral issue in the case and therefore not relevant within the meaning of Subsection (a)(1)(A) of Rule 5. While the court was correct that the letter impacted on Lawton's credibility, we disagree that it was not "relevant." According to Webster's Dictionary, the meaning of "relevant" is "having a significant and demonstrable bearing on the matter at hand." [6] The circuit court utilized the following definition of relevance contained in Rule 401: "evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, SCRE. Under either definition, we believe the letter in question was clearly relevant and should have been provided by the State in response to Lawton's Rule 5 request.

■ Moreover, Lawton was prejudiced by the State's failure to turn over the letter before trial. Disclosure of the letter was clearly material to the preparation of Lawton's defense because it likely would have affected his decision to testify, a fundamental right. *See Seabrook Island Prop. Owners' Ass'n v. Berger,* 365 S.C. 234, 243, 616 S.E.2d 431, 436

issue cannot be raised for the first time on appeal); *S.C. Farm Bureau Mut. Ins. Co. v. S.E.C.U.R.E. Underwriters Risk Retention Group,* 347 S.C. 333, 344, 554 S.E.2d 870, 876 (Ct.App.2001) (ruling an issue must be raised to and ruled on by the trial court for an appellate court to review the issue).

**6.** *See* Merriam–Webster's Online Dictionary, "relevant" (last visited March, 4, 2009) <http://www.merriam-webster.com/dictionary/relevant>.

(Ct.App.2005) (stating the right to testify in criminal proceeding is essential to due process, and is a fundamental right). There is a reasonable probability Lawton would not have testified had he known the State possessed such strong impeachment evidence. The State's strategy in failing to disclose the letter and instead surprising Lawton with it during cross-examination clearly prejudiced Lawton.

Accordingly, the ruling of the circuit court is

**REVERSED AND REMANDED.**[7]

SHORT, J., and KONDUROS, J., concur.

---

7. Lawton also argues that the circuit court committed reversible error by failing to define reasonable doubt; however, we decline to rule on this matter. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling an appellate court need not review all issues where one issue is dispositive).