# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Russell Earley, Respondent,

v.

State of South Carolina, Petitioner.

Appellate Case No. 2014-001566

Appeal from Sumter County
George C. James, Jr., Post-Conviction Relief Judge

Opinion No. 27672
Submitted February 16, 2016 – Filed October 19, 2016

## REVERSED

Attorney General Alan Wilson and Assistant Attorney
General Daniel Gourley, both of Columbia, for
Petitioner.

Tommy A. Thomas, of Irmo, for Respondent.

**JUSTICE KITTREDGE:** This is a post-conviction relief (PCR) matter.
Respondent Russell Earley was convicted of criminal solicitation of a minor and
sentenced to eight years in prison. After withdrawing his direct appeal,
Respondent filed a PCR application. The PCR court granted Respondent relief.
We reverse and reinstate Respondent's conviction and sentence.

# I.

Respondent's criminal charge arose from an encounter with a fourteen-year-old male (Victim) outside a public restroom at Walmart in Sumter in November 2008. On the evening of the incident, the Victim visited Walmart with his grandmother, who had promised to buy him some headphones. The Victim and his grandmother went in separate directions when they entered the store—the Victim headed for the electronics department while his grandmother went to pick up a few grocery items.

After separating from his grandmother, the Victim stopped to use the restroom before shopping for headphones; as he entered the restroom, he noticed Respondent following him. The Victim stated he felt uncomfortable because Respondent stood in the restroom watching the Victim use the urinal. The Victim testified Respondent thereafter followed him out of the restroom, pointed to the Victim's genitals, and offered the Victim oral sex, which the Victim declined in no uncertain terms. The Victim immediately reported the incident to Walmart security, and multiple witnesses testified the Victim was visibly upset after the incident.

As the Victim relayed the incident to store employees, a Walmart security officer spotted Respondent heading toward an exit and noticed a "steady pace about [Respondent's] step."[1] Respondent had not purchased anything and was leaving the store alone. The security officer immediately called law enforcement, followed Respondent out of the store, and watched him get into his vehicle and leave the parking lot. Within minutes, a police officer stopped Respondent's vehicle approximately half a mile from Walmart. Respondent was identified as the perpetrator and was arrested.

There were no witnesss to the incident, and nothing was captured on Walmart surveillance video. In an effort to undermine the Victim's character and thus his story at trial, defense counsel sought to introduce a cartoon image obtained from the Victim's Facebook page referencing marijuana use; however, the trial court

---

[1] The security officer stated Respondent was not running but explained Respondent's step was "not just your general [way of] casually" leaving the store.

denied the motion, finding the cartoon from the Victim's Facebook page was not admissible. The trial court did, however, find that Respondent's 2003 federal conviction for bank robbery would be admissible as impeachment evidence.[2]

At trial, Respondent testified in his own defense, and defense counsel questioned Respondent about his federal bank robbery conviction on direct examination in a strategic effort to mitigate its prejudicial impact. According to Respondent, he ate dinner with friends on the evening of his encounter with the Victim, and after dinner, the group went to Walmart in search of a birthday gift for a friend's son. After failing to locate the desired item, Respondent testified the group decided to try another store, and he stopped by the restroom before leaving Walmart. Respondent admitted encountering the Victim in the restroom; however, Respondent denied propositioning the Victim and being attracted to young boys.

Essentially, the theory of his defense was that the Victim fabricated the whole story and the motivation for doing so was that Respondent had caught the Victim trying to shoplift CDs. According to Respondent, he was already in the restroom using the urinal when the Victim entered the restroom. Respondent testified the Victim kept both his hands in the front pocket of his sweatshirt and was acting nervous. Respondent testified he heard "tearing up plastic, like opening CDs," and on his way out of the restroom, Respondent passed by the Victim, who was standing by the sinks, and said "hey, I wouldn't be doing that, I wouldn't be stealing."[3] However, Respondent admitted that he never actually saw the Victim attempting to steal any merchandise; rather, Respondent *assumed* the Victim was stealing CDs because he thought he heard plastic rustling in the Victim's sweatshirt pocket.

The issue in this PCR matter involves a line of questioning during the State's cross-

---

[2] We are aware of this Court's opinion in *State v. Broadnax*, 414 S.C. 468, 779 S.E.2d 789 (2015), upon which the dissent relies. However, the issue of whether the trial court conducted a balancing test pursuant to Rule 609(a)(1), SCRE, before determining this federal bank robbery conviction was admissible as impeachment evidence is not an issue before the Court.

[3] Although Respondent admitted being aware that the Walmart security officer followed him out the store, he offered no explanation for why he did not report the Victim's purported theft at that time.

examination of Respondent.  Specifically, the State had evidence that Respondent posted the message "See ya" on the Victim's Facebook wall the week before trial, despite having been ordered after his arrest not to have any contact with the minor Victim.  The State's theory was that by posting such a message, Respondent was attempting to intimidate or threaten the Victim on the eve of trial.  *See State v. Edwards*, 383 S.C. 66, 72, 678 S.E.2d 405, 408 (Ct. App. 2009) (holding that "witness intimidation evidence, if linked to the defendant, may be admitted to show a consciousness of guilt").  It is undisputed that the State did not provide defense counsel with a copy of Respondent's Facebook post "See ya" prior to trial.

Initially, Respondent was unaware the State had a copy of the message he posted on the Victim's Facebook page and denied having any contact with the Victim since the incident in the Walmart bathroom four years earlier.  However, once the State confronted Respondent with a copy of the message, Respondent admitted contacting the Victim and explained he did so "[be]cause his time will come."  Defense counsel did not object or otherwise alert the trial court that the State had failed to disclose the "See ya" Facebook posting prior to trial.  In response to the Solicitor's questions about his bank robbery conviction, Respondent volunteered that he had been convicted of not one, but *nine* bank robberies.  Respondent's testimony concluded shortly thereafter, and the defense rested without presenting any other evidence.

Immediately thereafter, the trial court invited counsel to place upon the record the substance of several side-bar conversations that took place off the record during the defense presentation.  At that time, defense counsel stated:

> [Defense Counsel]:  I understand Your Honor's ruling on the side bar, but our position was that while my client testified[,] Mr. [Solicitor] had asked him about going on to [the Victim's] Facebook page and leaving a message.  And obviously, Judge, what we had talked about before was the [marijuana cartoon] that we had gotten off of [the Victim's] Facebook page and printed a copy.  We talked about that earlier in trial, and *it was our intent to talk about that in response to Mr. [Solicitor's] question about the Facebook page*.

The Court: And I ruled that you not—that I was not allowing you to put in the information you got off of the [V]ictim's Facebook about smoking marijuana, whatever.

[Defense Counsel]: And Judge, I wanted to make sure—I was not going to offer it into evidence, but I wanted to ask my client what did he find on the Facebook page.

The Court: Yeah, *I would have allowed you to get into anything regarding him leaving a message on [the Victim's] Facebook page*, but not any other information that he might have come across on the Facebook so that's why I ruled that you do not introduce that, okay?

(emphasis added).

The jury returned a guilty verdict, and the trial court sentenced Respondent to eight years in prison. A direct appeal was timely filed but subsequently dismissed upon Respondent's motion to withdraw his appeal. Thereafter, Respondent filed a PCR application, in which his only legal or factual allegation was the general statement "ineffective assistance of counsel." Respondent's PCR application included no further details regarding his legal claims or any facts which supported his asserted ground for relief. Specifically, neither Respondent's PCR application nor his testimony at the PCR hearing referred, in any way, to his "See ya" Facebook posting or the word "mistrial."

At the beginning of the PCR hearing, Respondent's PCR attorney summarized for the PCR court the ineffective assistance of counsel claims Respondent wished to assert; however, this summary likewise made no reference to the Facebook comment or the word "mistrial."[4] Indeed, the Facebook posting was not mentioned

---

[4] This summary of ineffective assistance of counsel claims included counsel's failure to adequately prepare for trial; failure to review the State's discovery with Respondent; failure to adequately discuss a plea offer with Respondent; failure to interview and call as witnesses Respondent's friends who were with him at Walmart just before the incident; failure to effectively cross-examine the Victim; and failure to adequately advise Respondent regarding his decision whether to testify at trial and the ramifications of his prior criminal record. The PCR court denied relief on all these grounds.

until defense counsel brought it up during questioning by the State's attorney about his efforts to prepare for trial. In response to a question about why the defense did not interview or call as witnesses Respondent's friends who were with him at Walmart around the time of the incident, counsel explained that Respondent's friends' testimony would not have been helpful since none of Respondent's friends were present at the restroom when the solicitation was alleged to have taken place, and in dismissing the impact of his failure to interview and call those witnesses, counsel testified that he believed the turning point of the trial was the evidence that Respondent contacted the victim on Facebook—not the lack of defense witnesses.

After hearing trial counsel's testimony on direct examination that he was surprised to learn of the Facebook posting, Respondent's PCR attorney raised, for the first time, the issue of Rule 5, SCRCrimP, during cross-examination:

> Q. Now, you filed a Rule 5?

> A. I did.

> Q. Was this contact or this [Facebook] statement, do you think it was exculpatory? [Did the State] have an obligation to provide this information to you prior to trial?

> A. Well, I guess they could have shared it with me.

> Q. Could it have been potentially a Rule 5 violation?

> A. Come to think of it, it's a statement or alleged statement by my client.

Defense counsel testified that he did not receive a copy of the "See ya" message Respondent posted on the Victim's Facebook wall in response to the defense's Rule 5, SCRCrimP request and that Respondent "didn't tell me anything about it." Accordingly, defense counsel was "totally unaware" that Respondent had contacted the victim via Facebook prior to the trial. Defense counsel explained:

> We had the case set for trial in front of Judge Young. And Judge Young . . . saw [Respondent] in the courtroom and said, hey, you know, I got a conflict. I can't do this. And that's what caused it to get continued to the next week . . . . We had done some—one of the

assistan[ts] in my office had done some [] research. . . . And we discovered that this [Victim] had a Facebook page. And it had on there some character. And it says, "I smoke weed all day." So we thought, hey, you know, maybe this is something we could eventually [use to] impeach this [Victim's] character. So we had it in preparation for the trial . . . .

And, of course, when [the trial] got continued, I had told [Respondent] about that and showed him, look at this thing we found on this [Victim]'s Facebook page. Anyway, I said, well, [Respondent], we'll get back together next week. It looks like . . . they're going to call it for trial next week and we'll be prepared for it. . . .

What did happen and I was totally unaware of this is that [Respondent] had had some communication with the [Victim] during . . . the week between when it got continued . . . and I didn't know that he had done this. And, of course, what actually happened is, he sent this communication to the [Victim] and evidently the [Victim] turned around and gave it to [the Solicitor].

Defense counsel testified that he believed, up until that point on cross-examination, the trial was going well for his client:

I thought on direct, I thought [Respondent] was coming across very well with the jury. You know, . . . [he] had this conviction in Federal Court . . . but it wasn't . . . something that I thought would hurt him in this situation, get it out so the jury would understand. And the fact that he had pled to that showed that he had taken responsibility for that. . . . I didn't think the [Victim] came across as a star witness or [was] as sound and [a]s believable as you would like as a prosecutor.

Although defense counsel acknowledged that the evidence of Respondent's intimidating Facebook post was "going to come out just like [Respondent's] bank robbery conviction came out" had the State disclosed it before trial, counsel testified:

> Obviously, [my trial strategy] would have changed because then I would have known it was coming. . . . if I had known about it, I would have brought it out as a part of my direct questioning to [Respondent]. So that would have taken the sting out of it . . . .

Ultimately, the PCR court granted relief, finding the State should have disclosed the "See ya" Facebook posting in response to Respondent's motion pursuant to Rule 5(a)(1)(A), SCRCrimP, because the Facebook posting was a "statement" made by the defendant, the existence of which was known to the State. The PCR court further found the statement was relevant for both impeachment and witness intimidation purposes. Relying on *State v. Lawton*, 382 S.C. 122, 675 S.E.2d 454 (Ct. App. 2009), the PCR court concluded the statement was "material to the preparation" of the defense, and counsel was therefore deficient for failing to move for a mistrial based on the Rule 5 violation. Specifically, the PCR court found "there was no practical way for the [Respondent] to avoid testifying, because if he did not testify, the only story the jury would have heard was the victim's relatively uncontracticted testimony"; nevertheless, the PCR court found the Facebook posting was material to the preparation of the defense because, had it been disclosed, "trial counsel would have counseled [Respondent] how to respond to the question of whether he'd had any contact with the victim." As to prejudice, the PCR court found a curative instruction would have been insufficient to redress the prejudice resulting from the State's failure to disclose the Facebook posting. In fact, the PCR court essentially ruled that the trial court would have been compelled

*as a matter of law* to grant a mistrial.[5]  This Court issued a writ of certiorari to review the PCR court's order.

## II.

The State argues the PCR court erred in granting relief because the Facebook posting was not subject to disclosure under Rule 5, SCRCrimP, and alternatively, that the PCR court erred in finding a mistrial would have been required as a matter of law given the facts of this case.  Specifically, the State argues that because the PCR court found that Respondent would have had to take the stand to rebut the State's evidence at trial regardless of his prior knowledge about the State's evidence of the comment, disclosure of the comment was immaterial to his defense strategy.  Even assuming the Facebook posting was subject to disclosure under Rule 5, SCRCrimP, and that counsel was deficient for failing to move for a mistrial based on the State's nondisclosure, we find that the PCR court committed an error of law in holding that a mistrial would have been mandated as a matter of law.

---

[5]  The dissent contends the PCR judge's findings about prejudice were actually an exercise of discretion and points out the words "'as a matter of law' do not, at any point, appear in the PCR order."  What the dissent fails to point out or appreciate are the actual words that *do* appear in the PCR order: the PCR court found "the analysis of the [prejudice] prong must include an analysis of the question of whether the trial judge would have been required to grant a motion for a mistrial," and the PCR court ultimately concluded "the *trial judge would have been compelled*, upon proper motion, to grant a mistrial"; that "[a] *curative instruction would not have been sufficient* to cure the prejudice"; and that "the *applicant has established that a mistrial would have to have been granted if trial counsel had objected* to the discovery violation and moved for a mistrial."  (emphasis added).  These findings clearly support our view that the PCR court ruled that the trial court would have had only one choice—to grant a mistrial.  Moreover, even Respondent acknowledges in his brief, "the PCR Court found Respondent was prejudiced because had Trial Counsel objected and moved for a mistrial, the Trial Court *would have been required* to grant a mistrial." (emphasis added).  Thus, we reject the suggestion that the PCR court viewed its decision on prejudice as involving an exercise of discretion.

"'A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction has two components.'" *Walker v. State*, 407 S.C. 400, 404, 756 S.E.2d 144, 146 (2014) (quoting *Strickland v. Washington,* 466 U.S. 668, 687 (1984)). "The defendant must first demonstrate that counsel was deficient and then must also show the deficiency resulted in prejudice." *Id.* at 404–05, 756 S.E.2d at 146. "To satisfy the first prong, a defendant must show counsel's performance 'fell below an objective standard of reasonableness.'" *Id.* at 405, 756 S.E.2d at 146 (quoting *Franklin v. Catoe,* 346 S.C. 563, 570–71, 552 S.E.2d 718, 722 (2001)). To prove prejudice resulting from counsel's failure to move for a mistrial, an applicant must demonstrate that, had counsel moved for a mistrial, the trial court's denial of the motion would have amounted to an abuse of discretion. *Cf. Morris v. State*, 371 S.C. 278, 283, 639 S.E.2d 53, 56 (2006) (finding PCR applicant met his burden of proving he suffered prejudice under *Strickland* as a result of counsel's failure to request a continuance where the applicant demonstrated the trial court's refusal of the continuance would have amounted to an abuse of discretion); *accord Weinn v. State*, 281 S.W.3d 633, 641 (Tex. Ct. App. 2009) ("The failure of appellant's counsel to request a mistrial could only be termed an act of ineffective assistance of counsel if a mistrial should have been granted."). Where there is no support for the PCR court's conclusion, reversal thereof is proper. *See Johnson v. State*, 325 S.C. 182, 187–88, 480 S.E.2d 733, 735–36 (1997) (reversing the grant of PCR where counsel did not object or seek a mistrial in response to the solicitor's statement during closing that "the defendant has not put up a defense, he's not testified" and finding there was no evidence the accused was deprived of a fair trial because the trial court instructed the jury that it was not to consider the accused's failure to testify in any way and could not use it against the accused).

Rule 5, SCRCrimP, requires disclosure of evidence by the State, including statements by the defendant:

> Upon request by a defendant, the prosecution shall permit the defendant to inspect and copy or photograph: any relevant written or recorded statements made by the defendant, or copies thereof, within the possession, custody or control of the prosecution, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the prosecution . . . .

Rule 5(a)(1)(A), SCRCrimP.  "The rule, of course, is intended to enable a defendant to obtain prior to trial any of his own statements relevant to the crime charged against him so that he will be able to prepare properly to face the evidence that may be introduced against him at trial."  *United States v. Gleason*, 616 F.2d 2, 24 (1979) (discussing the underlying purpose of the similar federal rule).

"[W]here a party fails to comply with Rule 5, the court may order the noncomplying party to permit inspection, grant a continuance, prohibit introduction of the nondisclosed evidence, or enter such order as it deems just under the circumstances."  *State v. Kerr*, 330 S.C. 132, 150, 498 S.E.2d 212, 221 (Ct. App. 1998) (citing Rule 5(d)(2), SCRCrimP; *State v. Trotter,* 322 S.C. 537, 542, 473 S.E.2d 452, 4585 (1996)).  "Sanctions for noncompliance with disclosure rules are within the discretion of the trial judge and will not be disturbed absent an abuse of discretion."  *Id*. (citing *State v. Davis,* 309 S.C. 56, 63, 419 S.E.2d 820, 825 (Ct. App. 1992)).  Moreover, the trial court also has the prerogative to waive the disclosure requirements "for good cause shown."  Rule 5(g), SCRCrimP ("The court may, for good cause shown, waive the requirements of this rule.").

When the actions of the Solicitor rise to the level of prosecutorial misconduct, the question of whether a mistrial is warranted "'is determined by (1) the cumulative effect of such misconduct; (2) the strength of the properly admitted evidence of the defendant's guilt; and (3) the curative actions taken by the court.'"  *State v. Inman*, 395 S.C. 539, 565, 720 S.E.2d 31, 45 (2011) (quoting *United States v. Anwar,* 428 F.3d 1102, 1112 (8th Cir. 2005)).  "The power of the court to declare a mistrial should be used with the greatest caution and for plain and obvious causes."  *State v. Johnson*, 334 S.C. 78, 89, 512 S.E.2d 795, 801 (1999) (citing *State v. Crim,* 327 S.C. 254, 257, 489 S.E.2d 478, 479 (1997)).  "The granting of [a] motion for a mistrial is an extreme measure which should be taken only where an incident is so grievous that prejudicial effect can be removed in no other way."  *State v. Patterson*, 337 S.C. 215, 227, 522 S.E.2d 845, 851 (Ct. App. 1999).  "Instead, the trial judge should exhaust other methods to cure possible prejudice before aborting a trial."  *Id*.

In his order granting relief, the PCR court relied heavily upon *Lawton*, a decision in which the court of appeals found reversible error in the admission of a letter Lawton sent his ex-wife from jail, which stated "I know that my story is full of lies" and which the State failed to disclose under Rule 5, SCRCrimP, prior to trial. In *Lawton*, defense counsel immediately objected to the introduction of and questioning about the letter based on the State's failure to disclose it during

discovery.  The trial court overruled defense counsel's objection, finding that the letter was being used only for impeachment purposes, and therefore it was not "relevant" within the meaning of Rule 5, SCRCrimP, and did not fall within the scope of materials the State was obligated to disclose.  On direct appeal, the court of appeals reversed, finding the letter was "relevant" within the meaning of Rule 5(a)(1)(A), even if the letter impacted only the defendant's credibility, and therefore, the letter should have been disclosed by the State prior to trial.  The court of appeals further reasoned that "[d]isclosure of the letter was clearly material to the preparation of Lawton's defense because it likely would have affected his decision to testify," and because there was "a reasonable probability [the defendant] would not have testified had he known the State possessed such strong impeachment evidence," the court of appeals concluded Lawton was prejudiced by the trial court's error in admitting the undisclosed statement.  *Id*. at 127–28, 675 S.E.2d at 457.

Here, although the PCR court properly found Respondent's undisclosed Facebook posting was relevant for the purposes of witness intimidation, the PCR court nevertheless erred in concluding the posting had impeachment value prior to trial. Unlike the statement in *Lawton*—"my story is full of lies"—Respondent's statement in this case—"See ya"—is not impeaching on its face.  Indeed, there is nothing in the message "See ya" that inherently calls into question Respondent's credibility.  Rather, the impeachment value of the "See ya" statement in this case did not arise until Respondent denied contacting the Victim during his trial testimony.  *See Gleason*, 616 F.2d at 24 (finding, in bank fraud prosecution, that defendant's handwritten notes on agendas and financial statements were not "relevant" within the meaning of the similar federal criminal discovery rule, and thus subject to disclosure by the prosecution, because those documents "became relevant for impeachment purposes only after [the defendant] testified on direct that he did not personally keep acquainted with the bank's day-to-day operations"). Nevertheless, even absent any inherent impeachment value, the probative value of the "See ya" statement as evidence of witness intimidation was apparent to the State prior to trial, and therefore, this statement was "relevant" and should have been disclosed by the State under Rule 5, SCRCrimP.[6]  *See Edwards*, 383 S.C. at

---

[6] We note the precedent that "where evidence is equally available to the accused, the obligation on the part of the State to furnish such evidence to the accused is relieved."  *Anderson v. Leeke*, 271 S.C. 435, 439, 248 S.E.2d 120, 122 (1978); *accord United States v. Meregildo*, 920 F.Supp.2d 434, 445 (S.D.N.Y. 2013) (explaining that in the context of evidence the government failed to disclose during

72, 678 S.E.2d at 408 (holding that "witness intimidation evidence, if linked to the defendant, may be admitted to show a consciousness of guilt").

That being said, the State's nondisclosure does not, *a fortiori*, mandate the conclusion that trial counsel was deficient in failing to seek a mistrial on that basis. As to the deficiency prong of the *Strickland* analysis, a PCR applicant must show that trial counsel's performance fell below an objective standard of reasonableness. In discussing this issue, the PCR court borrowed the "materiality" analysis from *Lawton* and found counsel was deficient in failing to seek a mistrial because knowledge that the State possessed the "See ya" Facebook posting was material to the preparation of Respondent's defense. In so finding, the PCR court acknowledged that "there was no practical way for [Respondent] to avoid testifying" at trial, yet the PCR court nevertheless concluded the Facebook posting was "material to the preparation of [Respondent]'s defense" because if defense counsel had been made aware of the posting before trial, "counsel would have counseled [Respondent] about not denying its existence." In other words, although the nondisclosure did not, as a practical matter, impact Respondent's decision whether to testify, the PCR court found it nevertheless materially undermined Respondent's ability to prepare to meet the charges against him because defense counsel was denied the opportunity to advise Respondent not to lie about having made the Facebook posting. This was error.

First, there is no evidence in the record that the nondisclosure of Respondent's "See ya" statement had *any* impact (much less a *material* impact) upon Respondent's trial preparation or his decision to testify; thus, there is no evidence in the record to support the PCR judge's finding that the nondisclosure was material to the preparation of Respondent's defense. Moreover, it was an error of law for the PCR court to rely upon the "materiality" or prejudice analysis from *Lawton* to guide its analysis of the first prong of the *Strickland* framework. Indeed, *Lawton* dealt only with the existence and prejudicial impact of a trial court error on direct appeal and provides no logical basis for evaluating whether counsel's failure to seek a mistrial as redress for a Rule 5 violation fell below reasonable professional norms in this

---

the criminal discovery process, "there is no remedy for a defendant who possesses or has access to the information he claims was withheld"). However, because there is no evidence in the record as to the relevant social media privacy settings and whether or to what extent Respondent had access to his Facebook posting after making it, we decline the State's invitation to address this issue.

PCR matter. Although this Court has held the "presumption of adequate representation based on a valid trial strategy disappears when . . . there was **no** trial strategy in mind" in *failing to object* to improper evidence, *Smith v. State*, 386 S.C. 562, 568, 689 S.E.2d 629, 633 (2010), the claim at issue here is not that counsel rendered deficient performance in failing to object to the State's use of the undisclosed Facebook statement. Rather, the claim at issue is that counsel was deficient in *failing to move for a mistrial* based on the State's use of the "See ya" statement that was not disclosed under Rule 5, SCRCrimP.

At the PCR hearing, there was simply no evidence or discussion about the issue of a mistrial or the factors used to evaluate whether a Solicitor's actions constitute prosecutorial misconduct sufficient to justify a mistrial. Indeed, the word "mistrial" does not appear in the PCR transcript, nor is it included in Respondent's PCR application or in Respondent's post-hearing memorandum of law. Rather, trial counsel's testimony at the PCR hearing reveals that counsel believed that up until the disputed line of questioning, the trial was progressing favorably for Respondent, that defense counsel wished to impeach the Victim's character with the marijuana cartoon obtained from Facebook, and that Respondent was anxious to reach a resolution of the charges against him. All of these factors weigh against seeking a mistrial and could be construed as valid, strategic reasons why trial counsel did not seek such a sanction in response to the State's discovery violation; nevertheless, we ultimately need not resolve the issue of deficiency because, in any event, the PCR court committed an error of law as to the prejudice prong of the *Strickland* analysis.

Even assuming that counsel was deficient for failing to move for a mistrial based on the State's nondisclosure, we conclude the PCR court's order was controlled by an error of law. Specifically, we hold the PCR court incorrectly found a mistrial was the *only* remedy available to cure the prejudice resulting from the State's non-disclosure of the Facebook posting. In reaching this conclusion, the PCR court acknowledged the granting of a mistrial is "a serious and extreme measure," one within the trial court's discretion. The PCR court nevertheless concluded that "the trial judge would have been compelled, upon proper motion, to grant a mistrial." This was error in two respects. First, the PCR court ignored the other sanctions available to the trial court to remedy nondisclosure, and secondly, the PCR court focused myopically on the impeachment value of the Facebook posting and ignored its probative value as to witness imtimidation.

Moreover, in evaluating whether a mistrial would have been granted, the PCR

court narrowly considered the prejudicial impact to Respondent's credibility—prejudice which resulted from Respondent's lack of candor on the stand rather than from the State's failure to disclose the existence of the witness intimidation evidence. This was error, for Respondent was under oath when he denied having contacted the Victim, and the prejudice resulting from his failure to be truthful cannot be fully attributed to the State or otherwise operate as an automatic benefit to Respondent by mandating a mistrial as the only option.[7] *See State v. Needs*, 333 S.C. 134, 152 n.11, 508 S.E.2d 857, 866 n.11 (1998) (finding a party may not complain about an error induced by the party's own conduct (citing *State v. Stroman*, 281 S.C. 508, 513, 316 S.E.2d 395, 399 (1984); *State v. Epes*, 209 S.C. 246, 271, 39 S.E.2d 769, 780 (1946))).

We further note that Respondent volunteered on cross-examination that he had been convicted of bank robbery *nine* times, not the single conviction that was discussed prior to his testimony. Surely, when evaluating the entirety of the evidence and the alleged prejudice to Respondent from his denial of his Facebook "See ya" comment, it is essential to consider all of the impeachment evidence. The error of the PCR court is illustrated by the PCR court's paradoxical finding that

---

[7] The dissent suggests "an equally plausible reading is that Respondent did not intentionally lie, or withhold truth on the witness stand, but rather, merely provided an inartful response to an imprecise question." There was, of course, nothing imprecise about the question or the answer, and trial counsel so conceded. Trial counsel, according to the PCR order, acknowledged Respondent "was caught in a blatant lie." Moreover, we note the logical inconsistency in the positions taken by the dissent as to Respondent's denial about having contacted the Victim; specifically, the dissent urges that this denial undermined Respondent's credibility to a degree great enough to warrant a mistrial, yet, that it also was "an inartful response to an imprecise question." To the extent Respondent's denial was merely "an inartful response," then it logically follows that it could not have undermined Respondent's credibility to a degree sufficient to justify the mistrial the dissent claims was necessary.

Respondent's "credibility was arguably substantially undermined when he volunteered on cross-examination that he had been convicted of nine bank robberies instead of just one."

Turning to the issue of whether a mistrial would have been required to redress the Rule 5 violation, we find the prejudice attributable to the State's nondisclosure to be incremental under the facts of this case and would not have compelled the trial court to declare a mistrial. Had counsel brought the nondisclosure to the trial court's attention, it would have been within the trial court's discretion to determine the appropriate redress, if any. Moreover, there is no evidence the State withheld Respondent's Facebook posting in bad faith or that the nondisclosure could not have been cured by other, less drastic means, such as a brief recess or a curative instruction. Accordingly, it was error for the PCR court to conclude a mistrial would have been manifestly necessary had trial counsel so moved. *See State v. Williams*, 386 S.C. 503, 510, 690 S.E.2d 62, 65 (2010) (finding the trial court committed no error in capital murder proceeding in not declaring a mistrial and giving an *Allen* charge after jury revealed it was divided nine to three in favor of death sentence); *Green v. State*, 351 S.C. 184, 193, 569 S.E.2d 318, 323 (2002) (finding counsel was not deficient in deciding not to request a mistrial after the jury inquired about the accused's failure to testify based on counsel's belief that the jury selected was favorable to the accused and finding there was no evidence of prejudice where nothing was presented to demonstrate the accused would be in a significantly better position upon retrial); *State v. Beckham*, 334 S.C. 302, 309–10, 513 S.E.2d 606, 609–10 (1999) (finding defendant, who was accused of murdering his wife, was not entitled to a mistrial where a witness referred to wife's visit to a battered women's center); *State v. Anderson*, 322 S.C. 89, 90–94, 470 S.E.2d 103, 104–06 (1996) (finding no error in failing to declare a mistrial where, in murder prosecution, the State's witness identified defendant in court and addressed him, "Why, [defendant]? Why did you do it?. . . He didn't have to take her life."); *State v. Craig*, 267 S.C. 262, 265–66, 227 S.E.2d 306, 308 (1976) (finding no abuse of discretion in trial court's refusal to declare a mistrial where the solicitor stated in front of the jury, "I'm not up here to give this defendant a Baby Ruth, I'm up here to put him in the electric chair"); *see also United States v. Martinez*, 455 F.3d 1127, 1130–31 (10th Cir. 2006) (affirming a federal trial court's refusal to declare a mistrial based on the government's violation of the similar federal rule, explaining that a court should "impose the least severe sanction that will accomplish prompt

and full compliance" with discovery rules and observing that a cautionary instruction, a continuance, or exclusion of the evidence are "preferred remedies" over "the drastic remedy of mistrial" (quotation marks and citations omitted)).

Because the trial court would not have been compelled to declare a mistrial, we find the PCR court committed an error of law in finding the outcome of Respondent's trial would have been different had trial counsel moved for a mistrial based on the State's failure to disclose the Facebook posting.  Absent a showing of prejudice as required by *Strickland*, it was error to grant relief.

### III.

We reverse the PCR court's order granting relief and reinstate Respondent's conviction and sentence.


**REVERSED.**

**BEATTY and HEARN, JJ., concur.  PLEICONES, C.J., dissenting in a separate opinion.  FEW, J., not participating.**

**CHIEF JUSTICE PLEICONES**:  I respectfully dissent.  Like the majority, I assume the State violated Rule 5, SCRCrimP, when it impeached Respondent with evidence it failed to disclose prior to trial.  However, unlike the majority, I believe the PCR judge applied the correct standard of law in assessing whether the State's Rule 5 violation warranted a mistrial.  Further, because I believe there is probative evidence in the record to support the PCR judge's findings of fact and conclusions of law, I would affirm the order granting Respondent relief.  *See McCray v. State*, 317 S.C. 557, 559, 455 S.E.2d 686, 687 (1995) ("When there is evidence to support the findings and conclusions of the PCR judge, this Court will affirm those findings and conclusions.").

The majority states the PCR judge erred when he found a mistrial was the *only* remedy available to cure the prejudice resulting from the State's non-disclosure of the Facebook posting *as a matter of law*.[8]  I read the order differently.  Throughout his order, the PCR judge correctly articulated that the decision to grant or deny a motion for mistrial is within the trial judge's discretion and that a mistrial should only be granted "when the prejudice can be removed in no other way."  This is a correct statement of law.  *See State v. Herring,* 387 S.C. 201, 216, 692 S.E.2d 490, 498 (2009) ("[W]hether to grant or deny a mistrial is within the discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. The grant of a motion for a mistrial is an extreme measure which should be taken only where an incident is so grievous that the prejudicial effect can be removed in no other way.") (citations omitted).

After correctly stating the legal standard for a mistrial, the PCR judge evaluated the facts specific to this case, including: the timing of the State's introduction of the undisclosed evidence; the strength of the State's overall case against Respondent; and the importance of Respondent's trial testimony to his defense.  Based on these facts, the PCR judge concluded that: if trial counsel had moved for a mistrial when the State impeached Respondent with undisclosed evidence, the trial judge would have found the prejudice resulting from the State's misconduct could not have been removed by a curative instruction and the trial judge would have granted the motion.  This conclusion by the PCR judge is not a decision controlled by a misapprehension of the standard applied by a trial judge in considering a motion

for a mistrial.  Rather, it is nuanced application of the law expected of a PCR judge

---

[8] The majority states the PCR judge ruled the trial court would have been compelled *as a matter of law* to grant a mistrial; however, the words "as a matter of law" do not, at any point, appear in the PCR order.

vested with authority to assess the merits of PCR claims pursuant the *Strickland* standard. [9]

Further, I disagree with the majority's application of the two prongs of a *Stickland* analysis to the facts of this case. I disagree with the majority's assertion that the "quantum of prejudice the PCR judge should have considered was the extent to which Respondent was deprived of the opportunity to reduce the prejudice of the Facebook comment by strategically addressing it on direct examination." Assessing this "quantum of prejudice" is only pertinent in determining whether the State violated Rule 5, which, in turn, is relevant to the determination of whether trial counsel was deficient. The majority assumes, and I agree, that when the State introduced the Facebook posting at trial without having disclosed it prior to trial, trial counsel should have recognized the State's Rule 5 violation and acted accordingly. The PCR judge found that trial counsel was deficient for failing to do so, and, in my opinion, there is evidence in the record to support this finding. *See McCray*, *supra*.

As for the *Strickland* prejudice prong, it is the effect trial counsel's failure to move for a mistrial had on Respondent's trial *at the time the State's Rule 5 violation became apparent*, after which the PCR judge was required to determine whether Respondent had been prejudiced. And not, as the majority concludes, how trial counsel would have addressed the Facebook posting on direct examination had the State properly disclosed the evidence prior to trial.

In determining whether there was a reasonable probability trial counsel's deficiency affected the outcome of Respondent's case, I differ with the majority's interpretation of the record. The majority concludes Respondent committed perjury on the witness stand. After reading the colloquy, which the majority describes as demonstrating "lack of candor on the stand," I am convinced an equally plausible reading is that Respondent did not intentionally lie, or withhold truth on the witness stand, but rather, merely provided an inartful response to an

---

[9] Indeed, as the majority states, "Had counsel objected, it would have been within the trial court's discretion to determine the appropriate redress, if any." That is correct. However, in a PCR action, it is the PCR judge who must determine how the trial judge would have exercised his or her discretion had counsel objected at trial. *See e.g. Morris v. State*, 371 S.C. 278, 283, 639 S.E.2d 53, 56 (2006) (where this Court found Morris was prejudiced by trial counsel's deficient performance in failing to move for a continuance because "the refusal of the continuance would have amounted to an abuse of discretion").

imprecise question. The fact that the State chose to characterize this response as a lie throughout the remainder of Respondent's testimony and in closing argument does not make it so. Moreover, in my opinion, it is not for this Court to determine on appellate review that Respondent committed perjury. It is the fact-finder's role, and solely the fact-finder, to determine the truth or falsity of a witness' testimony. *See State v. Kromah*, 401 S.C. 340, 358, 737 S.E.2d 490, 500 (2013) (stating "the assessment of witness credibility is within the exclusive province of the jury. . . ") (citations and alterations omitted).

Accordingly, I do not believe the PCR judge committed an error of law in considering the effect the State's impeachment evidence had on the jury's perception of Respondent's credibility. This is exactly the quantum of prejudice that should be considered in assessing whether there was a reasonable probability that trial counsel's deficient performance affected the outcome of Respondent's trial. Moreover, this case amounted to a pure swearing contest. The jury was asked to determine which story was true: the victim's, that Respondent propositioned him, or Respondent's, that he did not proposition the victim, but rather, confronted the victim about his shoplifting. There were no other witnesses to the interaction between the victim and Respondent by the Wal-Mart restroom. Accordingly, I would affirm the PCR judge's finding that Respondent's credibility was essential to his defense and the paramount issue for the jury to determine. Further, I believe there is evidence in the record to support the PCR judge's finding that, absent the Rule 5 violation, the credibility of Respondent's testimony would not have been called into question in such a devastating way.[10] Thus, pursuant to

---

[10] I note the majority references Respondent's nine bank robberies as a reason why the introduction of the Facebook posting caused only "incremental" prejudice to Respondent. However, we recently held that robbery is not a crime in the nature of *crimen falsi*, which "bear[s] upon a witness's propensity to testify truthfully." *See State v. Broadnax*, 414 S.C. 468, 476, 779 S.E.2d 789, 793 (2015). Accordingly, it is questionable whether Respondent's admission to committing nine bank robberies should even bear upon the analysis of whether Respondent's credibility was damaged by trial counsel's failure to move for a mistrial.

Further, even if it were proper to consider the effect of Respondent's bank robberies in analyzing how Respondent's credibility was affected by the introduction of the Facebook posting, I would still affirm the PCR judge's finding that Respondent was prejudiced by trial counsel's deficient performance. *See McCray, supra.* During Respondent's testimony, Respondent informed the jury that he pleaded guilty to the bank robberies because he committed them, while, in

our scope of review, I would uphold the PCR judge's finding of *Strickland* prejudice. *See McCray*, *supra*.

Finally, I am also troubled by the policy implication of the majority's opinion. The majority's proposed *Strickland* analysis essentially creates a new rule of law: as long as the State uses incriminating evidence it has withheld in violation of Rule 5 to *successfully* convince a jury the defendant's testimony is not credible, the defendant cannot argue he or she was prejudiced. By deflecting blame to the defendant for the State's Rule violation, the majority's opinion undermines both the goal of Rule 5 and the role of the State in criminal prosecutions. As the Court of Appeals explains, the purpose of Rule 5 is to ensure the criminal defendant's right to a fair trial:

> [Rule 5] is [not] designed to displace the adversary
> system as the primary means by which truth is
> uncovered, but rather to ensure that a miscarriage of
> justice does not occur. Furthermore, the prosecutor's role
> transcends that of an adversary because he is the
> representative not of an ordinary party to a controversy,

---

contrast, Respondent did not plead guilty to the charge for which he was on trial because he did not commit the crime. Thus, the effect of the bank robbery convictions on the veracity of Respondent's testimony was negligible. Further, in my opinion, the State's introduction of the undisclosed Facebook posting in a way that confused Respondent and created the opportunity for the State to characterize Respondent as an adult who lies about his social-media contact with a minor victim was manifestly more damaging to Respondent's credibility during a trial for criminal solicitation of a minor than Respondent's past bank robberies. Accordingly, there is evidence in the record to support the finding that, if trial counsel had moved for a mistrial when the State's Rule 5 violation became apparent, there is a reasonable probability the trial judge would have granted the motion. *See Strickland*, *supra*.

> but of a sovereignty whose interest in a criminal
> prosecution is not that it shall win a case, but that justice
> shall be done.

*State v. Kennerly*, 331 S.C. 442, 454, 503 S.E.2d 214, 220 (Ct. App. 1998) (internal citations omitted) (internal quotation marks and alterations omitted).

There is probative evidence in the record to support the PCR judge's conclusion a reasonable probability exists that a mistrial would have been granted had trial counsel moved for one. Therefore, the PCR judge's determination that Respondent is entitled to relief must be upheld on review. *See McCray*, *supra*. To do anything else disregards the great deference afforded to PCR judges' findings of facts and conclusions of law and condones the State's action of withholding incriminating, discoverable evidence from the defense until the moment when introducing that evidence will have its most devastating effect.

Accordingly, I would affirm the PCR judge's order granting Respondent relief.